Before we begin our regular proceedings for this morning, I'd like to turn to Judge Newman for a moment. Mr. Hines, will you approach the bench? I move the admission of Christian B. Hines, who is a member of the Bar and is in good standing with the highest court of Illinois. I have knowledge of his credentials, and I am satisfied that he possesses the necessary qualifications. In fact, more than that, I have watched Mr. Hines in action as clerk in my chambers for a while. He is nearing the end of his tenure and is about to bring great talent and competence to the real world as he leaves us. And so it is my pleasure to move the admission of Mr. Hines to the Bar. Well, with the concurrence of Judge Toronto, we enthusiastically grant the motion. Thank you. Thank you. Please approach the clerk. Mr. Hines, we solemnly swear by a firm that you will report yourself as an attorney and counselor of this court, rightly and according to law, and that you will support the Constitution of the United States of America. I do. Welcome to the Bar of the United States Constitutional and Federal Circuit. Judge, welcome to the Bar. Thank you. First case for argument this morning is 14-1854, Astronet Technologies v. CAE System. Mr. Mason, whenever you're ready. Good morning. Thank you. I'm Jeffrey Mason with Morbis LLP representing Astronet Technologies, Inc. And I just wanted to start with some of the history here because we started this case three years ago in the Court of Federal Claims downstairs as well as in a district court. That was three years ago. And then on May 10, 2012, the Department of Justice appeared in the Federal Claims case and moved to dismiss that case. And that was the last that we heard from the Department of Justice until we are up on appeal now. Their amicus brief was submitted. There were some discussions below. There was a motion to dismiss that was filed below in the district court case, and there were some discussions that were had, but we weren't privy to those discussions at all. The record, 852, reflects some of those discussions. That was part of our appeal brief. Mr. Felder here did say during the actual motion to dismiss discussions below that it would not surprise me if the Department of Justice made their views known that this case proceeds past the Rule 12 stage. It did not, actually. We are here on a Rule 12 motion. And now on appeal, we have learned that the Department of Justice's views, which is that everything that the defendants in this case had done was authorized and contended to by the Department of Justice. Can I ask you this? Sure. Why do we need to get into the authorization question at all, since your contention rests on the contention that the government was actually using the claimed invention, which is enough under 1498 to bring this matter within 1498 and therefore outside? Absolutely. The original suits, there were two original cases. One was filed against the United States of America in general, as well as against the private contractors here. Those suits certainly were 1498 suits against the government itself, because it was a suit against the government. The second set of suits that we filed in district court were against private companies only. Can I just ask you one thing, just to be clear, because it might actually turn out to matter either now or later. By we, some of these suits were Mr. Haddad, and some of these were the corporation. And for purposes of Rule 41, that might end up making a very big difference to you, so you might want to keep them separate. Absolutely. So you're right. The original set of suits was Mr. Haddad proceeding process. I was not involved at that point in those suits. But they are part of the procedural history, and you're absolutely right. In terms of the 41 issues, I appeared late in some of those. Right. The current suit is a suit that alleges indirect infringement in which the direct infringement is a use by TSA, which is the United States. So this is a suit that alleges a use by the United States. Doesn't that end the question whether 1498 applies? We don't think so because, again, we're on Rule 12 here. So Rule 12, motion to dismiss, all reasonable inferences are drawn in our favor. Part of the briefing that we had below, you're right, the allegations did not state direct infringement. But if you actually look at the attachments to our complaint, the length of time under which some of these contracts were performed, we felt that some of the admissions made during the briefing, again, drawing all reasonable inferences in our favor, demonstrated direct infringement by the private companies as well as the TSA itself. Right. As I understood it, the direct infringement that you speak of now, never mind whether it was in the complaint, is only the setting up of testing modules. And you don't dispute, as I understand it, that that piece, the setting up of the testing so that the United States could look at it and say, okay, we like this one, we don't like this other one, that that was required by the contract. Not by, even if the resulting technology, once accepted, might not have been the only possible technology to comply with the solicitations. So even that, I don't think you're disputing, would come within the authorization, even as interpreted by necessity, just the testing piece. Well, our allegations actually went to what these contracts were intended to do when they succeeded at some point. A lot of these contracts, however, were failures. They were pilot programs that ultimately ended up not being widely deployed. So our allegations really went to, if this technology was widely deployed at airports, what would be happening? As you said, the government performing this, because that's the handoff. You develop the technology, you demonstrate it, you do beta tests, you see how it actually works in the field, and then it's widely deployed. But quite frankly, given the record that we have here, the earliest contracts and the ones that we sued on, the first three contracts that we sued on, were all essentially unsuccessful beta test type things, where again, it's a fairly mixed set of facts, where you have the government working very closely with government contractors. But we do feel that the direct infringement there is fairly mixed between government and private contractor, which is why we feel it's a mixture of by the government, which of course we would have to pursue the court of claims, as well as for the government. These are all systems claims, right? They're methods of making sure that the airport areas are secure. You just answered a question. These are system claims by saying right, and then you called them method claims. This is actually, as you know, an issue that at least is raised in the red brief. Let's suppose that, as I think a number of our cases say, you can't have a mixed apparatus, including system and method claim, and that sometimes language in claims that sounds like method language will be read as capability language, and then it's a system claim, and sometimes maybe apparatus language in method claims will be read as sort of background environment, and really a method claim. I don't know that it matters here, but do you have a view about – you've got to force it into one box or the other. Which box do you think is it? Fair enough. A lot of this sort of interestingly goes to the question of what we do on Rule 12. Do we do claim construction? Do we do facts? Do we do markman? So I guess a lot of this – a lot of the, I guess, problem we have with the decision below is that all this was done on Rule 12, all of it. The claim construction issues that you're raising, the factual issues about infringement. There was no discovery. There was nothing, and frankly, every case – Yeah, but you've got to have a position. I do. So that's all I was asking. What is your position? My position is that there are method claims, and when there's no processing going on, when the machines are off, that there's no processing going on, so there's no – it's not a system claim. That's our position on claim construction. Well, you've reserved a large chunk of your time for rebuttal, so do you want to hold on to what you've got left? Fair enough. Thank you. Okay, I guess we're splitting this argument three ways, right? Yes, Your Honor. Okay, and Mr. Felder, you are representing? I'm representing VA Systems Inc., Your Honor. Okay. We're going to run the clock separately for each of you. Thank you, Your Honor. So why can't VAE Systems be an inducer, even if it's not the contracting party, if it essentially induced everybody else, including its own sub, to enter into the contract? Your Honor, as you pointed out when Mr. Mason was speaking, the only conduct complained of in Astronaut's complaint is the government has used my patented invention. Under those circumstances, 1498 says that the patentee's remedy is reasonable and entire compensation at the Court of Federal Claims. To hold VA Systems Inc. or any other contractor liable in the district court as well would go beyond the entire compensation provided by Section 1498. Maybe – I think we're talking at cross-purposes. Forget about 1498 unless I just misunderstood what you just said. The first section of your brief is a VAE-specific argument that says, apart from 1498, the district court was correct to dismiss the claim against VAE Systems Inc. because what did we do? I apologize, Your Honor. I misunderstood the question. You're correct. The first argument raised in the brief is that VA Systems Inc. is the wrong party to this litigation. Does your 1498 answer, the one you just gave before, bear on that? It does not, Your Honor. Okay, okay. That applies no matter who the contractor is, Your Honor. A contractor cannot reduce a claim. Why couldn't the parent company be liable for inducing the ultimate downstream government practicing of these claims by entering into a contract with the subsidiary? In this circumstance, Your Honor, the parent company did not enter into any contract with the subsidiary. The only contract that's attached to the VAE Systems complaint is with the subsidiary that's two levels down. There is nothing in the complaint to suggest that the subsidiary was acting as an agent of the parent company. There is nothing in the complaint to suggest there was any sort of fraud or other untoward behavior going on that would suggest that. Does that particular subsidiary still exist? It does, Your Honor. This wasn't a one-time created, essentially a company, a subsidiary created for the purpose of the initial round of the contract. No, Your Honor. It still exists as a separate corporate organization. And if the district court properly concluded, that's perfectly acceptable for corporations to set up related companies for purposes of insulating each other from the other's liability. There is nothing in the complaint to link the subsidiary that's the party to the TSA contract to VAE Systems, which is the… Well, Your Honor, this is potentially very complicated, isn't it, these relationships? If you set up a subsidiary with no assets, and the subsidiary turns out to acquire a certain liability, there are corporate bail aspects and so on. Wouldn't you have been better off arguing non-infringement or the wrong court or whatever else? Then I'll call it a technicality. It's certainly very easily remedied. It wasn't remedied here, but the trial court proposed a remedy. Your Honor, I think there was a very easy remedy for Astronet here. They could have amended the complaint. In fact, when they proceeded Pro Se three years ago, they did name the contracting party. The fact of the matter is here on Rule 12, we have to accept what the pleading says. What the pleading says is that VAE Systems, Inc. had this contract, and that VAE Systems, Inc. performed under this contract. And then you look at the contract, and on its face, it's not VAE Systems, Inc. And there's nothing to link the contracting party back to VAE Systems, Inc. in the complaint itself. That's what matters under Rule 12. Well, except that the complaint says that VAE Systems, Inc. induced the ultimate infringement. That ultimate infringement having come to be by virtue of the contract between the government and the VAE Systems, Inc.'s sub. Why is that not a cognizable inducement claim? The apparent induced infringement by the contract counterparty with its sub. It's a bold conclusion in the complaint, Your Honor, that VAE Systems, Inc. took those actions. Those actions rely upon the performance of the contract that the alleged inducement took place through the performance of the contract. The contract is not performed by VAE Systems, Inc. The contract is not in the name of VAE Systems, Inc. The evidence attached to the complaint runs directly contrary to the allegation that VAE Systems, Inc. had some role in the performance of the contract. I'm going to ask you something about a JA site, but the pagination of the JA is so peculiar. There's a contract awarded to VAE Systems, Inc. at JA 11-13-5-11 to VAE Systems, Inc. What is that? I don't believe that's one of the TSA contracts at issue in this litigation, Your Honor. I believe that's a different contract. Okay. Why don't we hear from your colleagues? Thank you, Your Honor. Mr. Boyle? Good morning. Peter Boyle for NCR Government Systems. May it please the Court. NCR reserved time solely to address one issue that is unique to NCR amongst all the other appellees, and that's the two-dismissal bar under Federal Rule of Civil Procedure 41A1. You're not arguing on behalf of Morpho? I am not. ASTRONET has made no meaningful attempt, either in its reply brief or in argument today, to address the Rule 41 issues raised by NCR in our red brief. I won't waste the Court's time then going into a great deal of argument about the substantive arguments regarding Rule 41. There is, however, one very straightforward, simple, and dispositive issue with regard to the Rule 41 argument, and that is waiver. ASTRONET is now arguing for the first time on appeal that the very first voluntary dismissal, in the case we are calling ASTRONET 1, was effected not under notice by Rule 41A1, but by court order. Can I just ask, is the case you're calling ASTRONET 1 in fact one, a case in which the plaintiff was Mr. Haddad and not ASTRONET Technologies, Inc.? Because I think it's important, as we've just heard, to be fairly technical about corporate entities here, isn't it? That is correct, Your Honor. So in ASTRONET 1 is… Let's call it Haddad. Haddad, fine. In the Haddad case, Your Honor, Mr. Haddad sued, and in identifying himself in the complaint, he identified himself as the sole owner in doing business as ASTRONET. So in… So sole owners of corporations are in law ordinarily not equated in law with their solely owned corporations. Your Honor… In the absence of the grounds for piercing corporate bail. This isn't a piercing the corporate bail argument. It's a privity argument, Your Honor, and we address this in the lower court. Rule 41, the provision that you invoke, says the plaintiff, the plaintiff has to bring both suits. That didn't happen here. Now, you may have an argument about how well it's sort of roughly the same plaintiff, but literally speaking, it's not the same plaintiff. A couple points on that, Your Honor. First of all, ASTRONET does not challenge the privity argument on appeal. Second of all, if you look at the Manning case, which is cited in our brief, the Manning case shows that for Rule 41 purposes, if you're in privity with the party involved in the earlier decisions, that is enough to invoke the two-dismissal bar. On the plaintiff's side, not just the defendant's side? I think that may have been on the defendant's side, but we did address this in the lower court with plaintiff's cases, but it just never was raised by appellant here. In any event, Your Honor, the only argument raised on appeal with regard to the Rule 41 issue is that somehow the voluntary dismissal in that first case, the Haddad case, was a court-ordered dismissal under 41A2. That was never raised before the district court. The district court judge never had the opportunity in deciding NCR's motion to dismiss, never had the opportunity to consider whether 41A2 was the rule under which that first case was dismissed. ASTRONET has waived its right on appeal to make that argument here. That's clear from this court's decision in the Ladd case and in the Stauffer case, which we cite in our red brief. Let's just assume that we're interested in getting it right, whether or not it was raised. Do you have a comment on the correctness of where we are now? Yes, Your Honor. In the proceedings in Haddad, Mr. Mason, arguing on behalf of Mr. Haddad, argued that that very first dismissal was actually effective under Rule 41A1. They are now changing their story. It's completely proper to hold ASTRONET and its owner to the statements it made to the lower court in that case. It is now retroactively trying to change the procedural context of that case. So I think in terms of getting this right, the right decision is to find that that very first dismissal was a dismissal under Rule 41A1, not A2, and therefore the two-dismissal bar was triggered when ASTRONET dismissed NCR from the second case, ASTRONET 2. Can I ask you a quick question? And if it's outside the record, then just tell me that. I thought there was some mention of discussions between either, I guess, Mr. Mason, whoever he was representing, and you all about how he really needed to separate the, was it the 245 action against the different defendants after the AIA provision took effect and you need to have separate suits. And so in some sense, you on the defense side, or some of you on the defense side, were encouraging the separation of the first actual ASTRONET suit into two suits. Can you tell me anything about that? It is outside the record, Your Honor. But Morpho Trust Counsel, apparently before NCR's counsel even entered an appearance or discussed the case with Mr. Mason, did take the position that under the American Invents Act, the cases had to be separated. NCR's counsel, actually my partner Russ Korn, did not talk to Mr. Mason about this issue until after we had already been dismissed from the case. And by dismissed, you mean the filing of the amended complaint? The filing of the amended complaint. Which you have counted as a dismissal. Yes. So NCR had no role, NCR's counsel had no role in persuading Mr. Mason and ASTRONET to break up the cases and precipitating the second dismissal. Okay. Time's up. Thank you. Thank you. Barbara. May it please the Court, Megan Barbera on behalf of the United States. This case involved a straightforward application of Section 1498A. ASTRONET chose to allege indirect infringement against government contractors. The predicate, direct infringement, as ASTRONET concedes, is infringement by the United States, by the TSA. When you have alleged infringement by the United States, 1498A on its plain terms specifies that the exclusive remedy of the patentee is a case against the United States in the Court of Federal Claims for its entire compensation. I would also like to dispel the suggestion, and I think Mr. Mason started his argument with this, that there was any surprise about the government's position on the application of 1498A to the allegations here. The United States moved to dismiss the earlier Court of Federal Claims case because Section 1500 presented a jurisdictional bar there because Mr. Haddad had also brought a case in the district court that was already pending. But in our motion to dismiss, we made very clear, and this is at JA Roman 5-13-7, that the simplest solution, and we said that the simplest solution was for Mr. Haddad to dismiss the Court of Federal Claims case, to dismiss the pending district court case, and under 1498A to bring a suit against the United States in the Court of Federal Claims. The government invited him to do that. Instead of taking our suggestion, he waited a year and a half and refiled against the government contractors in the district court. So there was never a question that the United States believed that given the allegations here, that the TSA's contractors supplying the TSA was a system. In your view, none of this is actually relevant, right? Because authorization is unimportant under the statute if the allegation is the United States was using the invention. That is correct. Can I just switch you to another topic because you have so little time? Let's assume for the moment that this case is the dismissal on 1498 grounds is upheld, and the next day, Astronet files a new 1498 suit in the Court of Federal Claims. What kind of sort of threshold type defenses are you going to raise? The two that I'm most interested in are race judicata type defenses, whether based on Rule 41 or otherwise, and the second, a little bit less concerning, is statute of limitations. Can you address those two things? Your Honor, we haven't fully explored all of the defenses that we would raise in connection with the 1498A suit for this litigation. However, to address Your Honor's concerns, we would reserve any defenses that we would have to such a suit with respect, for example, to the statute of limitations. Whether the statute of limitations would have run would depend, of course, on the claims that Astronet alleged against the United States. In the Court of Federal Claims, Astronet hasn't asked for a transfer to the extent that the Court were concerned that there might be a statute of limitations bar. Perhaps a transfer would be appropriate, again, because 1498 applies here. The district court shouldn't have been – he couldn't proceed in the district court. We would reserve the remainder of our defenses, substantive and otherwise, that would be available. Your Honor, what's your view of the Rule 41 issue? Because if Rule 41 applies, it says judgment on the merits. You treat this as judgment on the merits. I assume, at least for present purposes, that what that means is that ordinary res judicata principles will apply. If the Rule 41 dismissal here, grounded dismissal, I guess, really just against NCR, the district court did not dismiss under Morpho on that ground, would you be invoking that as a res judicata basis for dismissing or otherwise rejecting the new 1498 suit insofar as it involves NCR? Right. So the suit, again, isn't – we are not a – the United States is not a party in this suit. Right. But I understand the concern that NCR was a party. I don't have an answer in terms of whether we would invoke 41. I can say that we are – the intent of the United States appearing here is not to foreclose Astronet from having it stay in court. It sued the wrong party in the wrong court. It should bring an action against the United States in the court of federal claims. Now, to the extent that by virtue of disregarding the United States' earlier advice about the application of 1498A proceeding in this court, to the extent there are limitations on what Astronet can now allege, the United States reserves its right to raise any defenses that may be available. I can't, however, give Your Honor a specific answer. I haven't thought through the implications of the fact that NCR was a party here, and there may be a res judicata argument with respect to NCR. Again, the United States is not a party here, so I think we would have to read your figures. And couldn't have been, right? That's correct. Right. That's correct. But again, I want to be clear that this is a case of infringement, alleged infringement by the TSA. To the extent that the court considers or looks at this case as a question of infringement for the United States, again, we do think that there was authorization and consent. We're confirming by virtue of our appearance here that there was authorization and consent to the actions that are alleged. And either way, 1498 applies, and Astronet should bring a suit against the United States and the Court of Federal Claims. Thank you. We'll move back to you, Mr. Mason. Let me take that sort of in reverse order because Morpho has not appeared today, and that's actually fairly important because the Department of Justice did say that we had a choice, essentially, to go to the Court of Claims, and we didn't. Mr. Haddad did proceed originally, pro se, in both courts. But I have a court case here. This is actually from the Court of Claims. It's a carrier court versus the United States. It's a 1976 decision where, in essence, there were government contractors who were contracted to clean up Andrews Air Force Base. It was a garbage disposal or something. I don't even know what the technology was. It doesn't really matter too much. At the end of the day— I did it in your brief. Oh, absolutely. And so, in essence, they were sued on a patent. Somehow or another, they used a patented either method or device in this cleanup project. Then they tried to collect in the Court of Claims as the government— But just to be clear, that was not a case in which the allegation was that the federal government itself was using the patent invention. That's correct. So if that were dispositive here, then the carrier case just wouldn't be material to— Well, it's more material to the procedural issues that you were asking a little bit about because we couldn't go to the Court of Claims. That was our problem. The attachments to the motion to dismiss in the Court of Claims said it had to be necessary to the contract. These particular garbage containers were not necessary to the carrier case contract. So if we went to the Court of Claims without infringement— We did not feel that infringement here was necessary to the contract. That's our position. That's what we've alleged. And Rule 12, I feel that that's actually what the record reflects. If we had gone to the Court of Claims, we would have lost just as carrier court was thrown out of the Court of Claims on summary judgment by the government. I guess I don't really understand that. Your allegation is that TSA, which is part of the United States government, was directly infringing. Our allegation, as well as all reasonable inferences being drawn in our favor, we also feel that the record below now reflects direct infringement by the private parties as well. And that's ultimately why we felt we would lose. If we went to the Court of Claims— Again, the Department of Justice accurately reflected that was their advice. But then they attached the actual contracts. We did the research. We found the carrier case. Mr. Dodgen-Ommer. Can I just ask this? Absolutely. There's one question about the VAE issue. Why did you not amend your—I guess the 245 case to name the sub? I mean, that's what I asked about. Do they still exist? Absolutely. Maybe it's a shell corporation. The correct—Mr. Felder was absolutely correct. The one contract that you did identify actually is not at issue in this particular suit. But the attachment that is relevant to the suit is JA-11—it's Roman numeral 2—13-7-1. It's an article which we attached to our complaint that says that VAE Systems, Inc. developed the technology. So we relied on that. And on Rule 12, we feel that that's a reasonable inference for us to say that they're directly infringing. So, again, for VAE specifically, that's why we felt the record in our favor anyway that we didn't sue the wrong sub. There are other subs. You're right. They may be bankrupt. There may be all kinds of issues. We just don't know that. We didn't get past Rule 12. So at least for VAE, that's part of it. And for NCR, you're absolutely correct. I mean, Morpho Trust did raise this objection. They didn't make a big deal out of it, but we did dismiss mainly because there was an objection to all three people being in one suit. So we did actually dismiss, but we feel that ultimately the original Haddad suits that were brought without my help, frankly, were sufficiently convoluted in terms of how the dismissal came about. Eventually, I was involved in that on behalf of Mr. Haddad, but that it was by court action. It was not really done by 4181. So we do feel that for NCR, there's not two dismissals. Also, too, we really do feel like there should be an actual record, an actual trial in this case, because ultimately we did not get beyond even the pleading stage. Every case that's actually looked at this, including the Federal Circuit itself, in the Sevenson case, this is in the briefs as well, but 477 after 1361, as well as the Nextec decision that we're relying on, as well as the Morpho Detection Systems case. So all these cases have allowed these types of matters to be litigated, essentially whether or not it's actually necessary to the performance of the contract, as opposed to disposing it on Rule 12. That, we feel, is not warranted on the record here, and so I think we would like the court to reverse the remand so we can go forward at least to the summary judgment stage, if not trial, because consistently this court, as well as the Court of Claims, that is what they have required in the past, and we would like to move forward with our case. It's been three years, and we're stuck basically at the beginning of it, and we'd like to move forward. Thank you very much for your time. Thank you. We thank all parties for taking this committee.